

**SO ORDERED.**

**SIGNED this 7th day of October, 2014.**

*Catharine R Aron*
_____
UNITED STATES BANKRUPTCY JUDGE

---

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF NORTH CAROLINA
## WINSTON-SALEM DIVISION

|                                    |   |                      |
|------------------------------------|---|----------------------|
| In re:                             | ) |                      |
|                                    | ) |                      |
| **Russell Scott Page and**         | ) | **Case No. 13-51224**|
| **Christina Joy Duncan Page**      | ) |                      |
|                                    | ) |                      |
| Debtors.                           | ) |                      |

### <u>MEMORANDUM OPINION AND ORDER DISMISSING DEBTORS' CASE</u>

THIS MATTER came before the Court on August 20, 2014, upon Creditor Steven Diaz's Objection to Confirmation of Second Proposed Chapter 13 Plan. Appearing before the Court were Steven Diaz and his attorney, John Meadows; Russell and Christina Page (collectively, the "Debtors") and their attorney, Wes Schollander; and Kathryn Bringle, on behalf of the Office of the Chapter 13 Trustee. Based upon the pleadings and the arguments of counsel, the Court makes the following findings of fact and conclusions of law pursuant to Rules 9014 and 7052 of the Federal Rules of Bankruptcy Procedure.

### <u>JURISDICTION</u>

This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334 and Local Rule 83.11 entered by the United States District Court for the Middle District of North Carolina. This is a core proceeding, within the meaning of

28 U.S.C. § 157(b)(2), which this Court has jurisdiction to hear and determine.

## FINDINGS OF FACT

Steven Diaz is the ex-husband of Christina Page. They have five biological children, ranging from ages 8 to 21. Mrs. Page divorced Mr. Diaz in 2009 and married Russell Page the same year. Mr. Diaz and Mrs. Page executed a Separation and Property Settlement Agreement on October 16, 2008, in Forsyth County, North Carolina. The agreement became enforceable through an order of the Forsyth County District Court entered on January 26, 2009 ("Separation Order"). The separation was not amicable and remained strained after the divorce. On June 1, 2009, Mr. Diaz filed a Motion in Forsyth County state court ("First Contempt Motion") requesting that the state court find Mrs. Page in contempt of the Separation Order.

After a hearing on Mr. Diaz's First Contempt Motion and by Order dated May 11, 2010, the Honorable George Bedsworth of the Forsyth County District Court found Mrs. Page in willful violation of the Separation Order and ordered her to pay a reasonable sum toward Mr. Diaz's legal fees ("First Contempt Order"). Mrs. Page appealed the First Contempt Order to the North Carolina Court of Appeals on May 26, 2010. The Court of Appeals dismissed Mrs. Page's appeal of the First Contempt Order, concluding in an opinion issued June 7, 2011, that the appeal was "clearly interlocutory." *Diaz v. Diaz*, 713 S.E.2d 791 (N.C. Ct. App. 2011).

On September 2, 2011, Judge Bedsworth ordered Mrs. Page to pay Mr. Diaz $17,000 before December 1, 2011, for attorney's fees he had incurred in relation to his First Contempt Motion ("First Fee Order"). Nearly two years later on June 27, 2013, the Honorable Lisa Menefee of the Forsyth County District Court entered a separate order requiring Mrs. Page to pay Mr. Diaz $13,691.16 within thirty days, on account of the appellate attorney's fees Mr. Diaz incurred in defending against Mrs. Page's appeal of the First Contempt Order ("Second Fee

Order"). On October 2, 2013, Judge Menefee found Mrs. Page in willful contempt of the First Contempt Order and ordered her to either pay Mr. Diaz $17,000 before October 31, 2013, or spend thirty days in the custody of the Sherriff of Forsyth County ("Second Contempt Order").

Two days after the entry of the Second Contempt Order, Mr. and Mrs. Page filed a petition for relief under Chapter 13 of the Bankruptcy Code. The Debtors listed $177,400 in secured debt, comprised of a first and a second mortgage on the Debtors' residence that is titled in the name of the female debtor only and has in excess of $20,000.00 in equity; $13,220 in unsecured priority debt that includes four tax claims and $12,000 in child support arrears owed by Mr. Page to his ex-wife; and $140,115 in general unsecured debt. The Debtors claimed eight dependents, including all five of Mrs. Page's biological children with Mr. Diaz (step-children to Mr. Page), two biological children of Mr. and Mrs. Page, and one biological child of Mr. Page (step-child to Mrs. Page). At the time of filing, the Debtors' sole income was from food stamps, and they had a net monthly income of negative $5,028 per month, partly on account of a monthly obligation of $1,319 for dependents living outside the home.  Their only other sources of income in 2013 had been from Mr. Page's unemployment income and Mrs. Page's child support income. They both had employment income in 2011 and 2012. The Debtors listed $13,695 owed to Mr. Diaz pursuant to the Second Fee Order and classified it as a general unsecured claim. The Debtors did not list any debt from the First Fee Order.

The Debtors' first Proposed Plan was filed November 27, 2013. The plan provided for a plan payment of $150 per month over 36 months, with an estimated dividend to general unsecured creditors of 0%. Mr. Diaz filed two proofs of claim on December 4, 2013: one for a $17,000 unsecured priority claim on account of the First Fee Order and Second Contempt Order, and one for a $13,691.16 unsecured priority claim on account of the Second Fee Order. Mr. Diaz

listed both claims as being entitled to priority as Domestic Support Obligations, pursuant to 11 U.S.C. § 501(a)(1)(A) or (B).

Mr. Diaz filed an Objection to Confirmation on December 5, 2013, on the grounds that it did not account for his two priority claims. In a brief submitted February 17, 2014, Mr. Diaz additionally argued that the plan was not proposed in good faith. At the hearing on that matter on January 15, 2014, Mrs. Page testified, without objection, that the reason the Debtors filed for relief under Chapter 13 as opposed to Chapter 7 was because she was advised by counsel that only Chapter 13 would enable the Debtors to discharge debts for attorney's fees incurred by herself and Mr. Page. *Compare* 11 U.S.C. § 1328(a)(2) *with* 11 U.S.C. § 523(a)(15).

This Court denied confirmation on February 28, 2014, finding that the Debtors' proposed monthly payments of $150 were insufficient for the required "full payment, in deferred cash payments, of all claims entitled to priority," namely Mr. Page's $12,000 child support arrearage. 11 U.S.C. § 1322(a)(2); *see also* 11 U.S.C. § 1325(a)(6). Moreover, this Court found that the Debtors had not made the required showing that they were current on post-petition domestic support obligations. *See* 11 U.S.C. § 1325(a)(8).

The Debtors filed a second Proposed Plan on May 22, 2014, which provided for plan payments over 60 months of $150 per month for November 2013 through June 2015 and $375 per month thereafter. The estimated dividend to general unsecured creditors was 3%. The Debtors again proposed to directly pay ongoing child support payments to Mr. Page's ex-wife but provided for the child support arrearage to be paid through the plan. The Debtors amended their reported income to reflect that Mr. Page had found employment and that their net monthly income was approximately negative $30 per month. The Debtors noted their food stamp benefit

would drop or terminate at some future date but that their families were willing to assist with plan payments.

Mr. Diaz filed a second Objection to Confirmation on May 27, 2014, on the grounds that the plan still did not account for his two priority claims. On August 20, 2014, Mr. Diaz, through counsel, orally supplemented his objection by arguing that the plan was not filed in good faith under 11 U.S.C. § 1325(a)(7).

## ISSUE

Whether the Debtors filed their petition in good faith pursuant to 11 U.S.C. §§ 1325(a)(7) and 1307(c).

## DISCUSSION

Every debtor who files for bankruptcy under Chapter 13 of the Bankruptcy Code is required by §§ 1325(a)(7) and 1307(c) to file in good faith. Section 1325(a)(7) is one of a number of confirmation requirements for Chapter 13 plans. It is a new confirmation requirement added by BAPCPA in 2005. This section expressly requires that "the action of the debtor in filing the petition was in good faith." 11 U.S.C. § 1325(a)(7).

Section 1307 governs conversions and dismissals of Chapter 13 petitions. This section provides that upon request of a party in interest, the court may dismiss a case for cause under Chapter 13 or convert it to Chapter 7, whichever is in the best interests of creditors and the estate. The section goes on to list eleven non-exclusive examples of cause, none of which include bad faith. There are a minority of cases finding that § 1307(c) contains no good faith requirement. *See In re Ford*, 78 B.R. 729 (Bankr. E.D. Pa. 1987); *In re Prud'Homme*, 161 B.R.747 (Bankr. E.D.N.Y. 1993). However, the U.S. Supreme Court in *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365 (2007), made it clear that if a debtor acts in bad faith prior to or in

the course of filing the Chapter 13 petition, then the petition may be dismissed. In addressing §

1307(c) the Court stated that "despite the absence of any statutory provision specifically

addressing the issue, the federal courts are virtually unanimous that prepetition bad-faith conduct

may cause a forfeiture of any right to proceed with a Chapter 13 case." *Id.* at 1107.

Besides incorporating a good faith standard as a basis for dismissal in § 1307(c), the

Supreme Court provided guidance in defining the concept of good faith. In footnote 11, the

Court noted:

> We have no occasion here to articulate with precision what conduct qualifies as
> "bad faith" sufficient to permit a bankruptcy judge to dismiss a Chapter 13 case or
> to deny conversion from Chapter 7. It suffices to emphasize that the debtor's
> conduct must, in fact, be atypical. Limiting dismissal or denial of conversion to
> extraordinary cases is particularly appropriate in light of the fact that lack of good
> faith in proposing a Chapter 13 plan is an express statutory ground for denying
> plan confirmation. 11 U.S.C. § 1325(a)(3).

*Marrama*, 549 U.S. at 375 n.11.

The Fourth Circuit has recognized the lack of good faith as basis to dismiss a Chapter 13

case under § 1307(c). *See, e.g.*, *In re Kestell*, 99 F.3d 146, 148 (4th Cir. 1996) ("Reasons

constituting 'cause' for dismissal include enumerated ones . . . as well as judicially constructed

ones such as bad faith."). In analyzing good faith the Court must inquire "whether or not under

the circumstances of the case there has been an abuse of the provisions, purpose, or spirit of [the

Chapter] in the proposal or plan." *In re Bateman*, 515 F.3d 272 (4th Cir. 2008) (quoting *Deans v.

O'Donnell*, 692 F.2d 968, 972 (4th Cir. 1982)).

In *Deans v. O'Donnell*, the Fourth Circuit established factors that, while not exhaustive,

should be considered in determining good faith. These factors include the percentage of

repayment proposed to unsecured creditors, the debtor's financial situation, the period of time

payment will be made, the debtor's employment history and future prospects, the nature and

amount of unsecured debt, the debtor's prior bankruptcy filings, the debtor's honesty in representing the facts, and any unusual or exceptional problems facing a particular debtor. *Deans*, 692 F.2d at 972. The Fourth Circuit later added debtor's prepetition conduct to its list of factors. *See Neufeld v. Freeman*, 794 F.2d 149 (4th Cir. 1986). Other courts have looked at the timing of the petition, how the debt arose as well as the debtor's motive for filing, whether the debtor intended to defeat state court litigation, whether the debt could be discharged in a Chapter 7. *See Matter of Love*, 957 F.2d 1350, 1357 (7th Cir. 1992); *In re Chinichian*, 784 F.2d 1440, 1445 (9th Cir. 1986).

An additional factor for determining the good faith of the debtor is whether he or she was eligible to file for Chapter 13 under § 109(e). Section 109(e) states that "[o]nly an individual with regular income . . . may be a debtor under chapter 13 of this title."  The term "individual with regular income" is defined in § 101(30) as an "individual whose income is sufficiently stable and regular to enable such individual to make payments under a plan under chapter 13 of this title…" This requirement is unique to Chapter 13 cases, as a lack of regular income would not preclude a debtor from filing for Chapter 7. To satisfy the eligibility requirement of §109(e), the debtor must have regular income at the time of filing the case, or the debtor must give "reasonable assurances" of regular income. *In re Smith*, 234 B.R. 852, 855 (Bankr. M.D. Ga. 1999). When a debtor files for Chapter 13 and does not have regular income under § 109(e), the filing becomes questionable and subject to a good faith analysis.  In considering all of these factors, the bankruptcy court must use its discretion to weigh the totality of the circumstances. *See Deans*, 692 F.2d at 972; *In re Soppick*, No. 13-16045, 2014 WL 4295780, at *11 (Bankr. E.D. Pa. Aug. 28, 2014).

The party who carries the burden of proving the good or bad faith of the debtor is dependent on which provision is claimed. Under § 1307(c), the party seeking to dismiss the debtor's case has the burden of proving that the debtor's bad faith warrants dismissal. *See Love*, 957 F.2d at 1355. However, under § 1325(a)(7), the debtor "bears the burden of proving, by a preponderance of the evidence, that her plan was proposed in good faith." *In re Stanley*, 441 B.R. 37, 40 (Bankr. M.D.N.C. 2010); *see also In re Werts*, 410 B.R. 677, 690 (Bankr. D. Kan. 2009) (stating that "although a debtor bears the burden of proving that a plan was filed in good faith under § 1325(a), the burden of showing that a case was filed in bad faith so as to require conversion or dismissal under § 1307(c) falls on the party seeking such conversion or dismissal"). While any one factor, standing alone, might not be sufficient to warrant dismissal, using the totality of the circumstances approach this Court finds that Mr. Diaz has met his burden under § 1307(c) and dismissal is appropriate. Therefore, it is unnecessary to determine whether the Debtors have met their burden under § 1325(a)(7).

The Debtors' motive for filing under Chapter 13 evidences bad faith. At a hearing on January 15, 2014, when Mrs. Page was asked why she filed for Chapter 13 instead of Chapter 7, she responded that in order "to include domestic attorney fees we needed to file Chapter 13." By Mrs. Page's own admission, she filed for Chapter 13 to circumvent the First Fee Order that required her to pay $17,000. By filing for Chapter 13, Mrs. Page in essence stayed the Contempt Order and avoided jail. While it is understandable that Mrs. Page wanted to avoid going to jail, her persistent and wrongful behavior over a period of years accumulated a large amount of attorney fees that she made no effort pay. In contrast to a typical Chapter 13 case, the Debtors' home was not in foreclosure, and their car was not repossessed. Instead, the Debtors filed for Chapter 13 to secure Mrs. Page from complying with a state court order.

The timing of Mrs. Page's Chapter 13 petition further shows her intent to defeat state court litigation. On May 11, 2010, a state court found Mrs. Page in willful violation of the terms of the Separation Order by intentionally attempting to alienate the children from their father and ordered her to pay a reasonable sum toward Mr. Diaz's legal fees. When Mr. Diaz and Mrs. Page could not agree on an amount, the court ordered Mrs. Page pay Mr. Diaz $17,000. She was given until November 30, 2011, to pay these fees. She failed to comply with the order and made no payment on this obligation. The Second Contempt Order found Mrs. Page in willful civil contempt and ordered her to be imprisoned for a minimum of 30 days or until she had purged herself of contempt by paying Mr. Diaz. The proximity in time between the Second Contempt Order and Mrs. Page's filing, a mere two days, is not coincidental but instead demonstrates an impermissible attempt to use the protections of the Bankruptcy Code to vitiate the litigation costs imposed on her by the state court.

In addition to her timing and her motive, Mrs. Page willfully and unnecessarily incurred unsecured debt at the expense of Mr. Diaz. On May 26, 2010, the female debtor appealed the May 11 Order which changed physical custody of her three children. Despite repeated notices from counsel for Mr. Diaz that her appeal was interlocutory Mrs. Page did not withdraw her appeal. After the North Carolina Court of Appeals dismissed her appeal as "clearly interlocutory," Judge Menefee entered an order requiring her to pay Mr. Diaz the sum of $13,691.16 for his appellate attorney fees. *Diaz v. Diaz*, 713 S.E.2d 791 (N.C. Ct. App. 2011). Mrs. Page incurred this debt by pursuing a frivolous appeal and attempted to mollify any repercussions by filing for bankruptcy. Her manner of accumulating this debt and her other attorney fee debt goes against the spirit of the Bankruptcy Code.

The Debtors were not honest with the Court regarding the facts of their case. In particular, the Debtors failed to report Mrs. Page's unsecured attorney fee debt from the First Fee Order in the amount of $17,000. The Debtors had ample opportunity to amend their petition to reflect their omission and yet failed to do so. Their failure to amend is especially stark in light of the facts that Mr. Diaz filed a proof of claim for $17,000 and filed two objections to confirmation asking the Court to treat the debt as a priority claim.

This Court also weighs the Debtors' questionable eligibility to file a Chapter 13 case. At the time of filing, the Debtors' income consisted entirely of food stamps and contributions from family and charitable organizations. They had a negative net income in excess of $5,000 per month. The Debtors' income from food stamps was not sufficient to cover the Debtors' expenses and plan payments when they filed this case. *See Smith*, 234 B.R. at 854 (finding that public assistance that was insufficient to support living expenses was not "regular income" under § 109(e)). Although the Debtors noted that they also received help from family members and other organizations, these sources were neither specific nor reliable enough to qualify as "reasonable income" sufficient to fund a Chapter 13 plan. *See In re Porter*, 276 B.R. 32, 38 (Bankr. D. Mass. 2002) (reasoning that a family member's gratuitous payments to a debtor did not constitute "regular income" for Chapter 13 purposes); *In re Hanlin*, 211 B.R. 147, 148 (Bankr. W.D.N.Y. 1997) (determining that a debtor whose parents agreed to fund his Chapter 13 plan did not have "regular income" under § 109(e)); *In re Loomis*, 487 B.R. 296, 301-02 (Bankr. N.D. Okla. 2013) (finding that voluntary contributions from debtor's fiancée did not constitute "regular income"); *In re Heck*, 355 B.R. 813, 824-25 (citing 1 Keith M. Lundin, *Chapter 13 Bankruptcy*, 3d Ed., § 9.10 (2000 & Supp. 2004)). Some gratuitous contributions are allowed, particularly when the funds come from a non-filing spouse or pursuant to a legal obligation; however, this is not the

case here. *See Porter*, 276 B.R. at 38; *Loomis*, 487 B.R. at 300. At the time the Debtors filed their Chapter 13 case, they did not have the requisite "regular income" under § 109(e) and they did not provide reasonable assurances of future regular income that were sufficiently stable and regular.

The only factors in the Debtors' favor are that they are not repeat filers and they have been candid with the court by admitting they filed Chapter 13 to wipe out the debt owed to Mr. Diaz. They also stated it was their understanding that such debt would not be discharged in a Chapter 7 proceeding. However, after weighing the Debtors' candidness against their bad motives, obvious timing, manner of accumulating debt, their dishonesty with the Court, and their questionable ineligibility to file for Chapter 13, it is clear that the Debtors filed their petition in bad faith.[1] Their conduct is clearly atypical of the debtors that seek relief from this Court and rises to the level of bad faith.

Based on the totality of the circumstances, the court finds that cause exists to dismiss this Chapter 13 case and

IT IS ORDERED, ADJUDGED AND DECREED THAT THIS CASE IS DISMISSED. THE DISMISSAL ORDER WILL BE HELD FOR A PERIOD OF TEN DAYS IN THE EVENT THE DEBTORS CHOOSE TO CONVERT THEIR CASE TO A CHAPTER 7.

---

[1] It is important to note that the factors for determining a good faith filing under Chapter 13 are not the same as those under Chapter 7. *Compare* 11 U.S.C. § 707 *with* 11 U.S.C. § 1307(c). Thus, under these facts it is likely that the Debtors would not have had their case dismissed for filing in bad faith had they filed for Chapter 7.

SERVICE LIST


Russell S. Page
Christina J. Page
Debtors

Wes Schollander, III
Attorney for Debtors

John A. Meadows
Attorney for Steven Diaz

Kathryn L. Bringle
Trustee

Steven Diaz
108 W. Monmouth Street
Winston-Salem, NC 27127

William Miller
US Bankruptcy Administrator